(Slip Opinion)          OCTOBER  TERM,  2012          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MONCRIEFFE *v.* HOLDER, ATTORNEY GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 11–702.   Argued October 10, 2012—Decided April 23, 2013

Under the Immigration and Nationality Act (INA), a noncitizen convicted of an "aggravated felony" is not only deportable, 8 U. S. C. §1227(a)(2)(A)(iii), but also ineligible for discretionary relief.   The INA lists as an "aggravated felony" "illicit trafficking in a controlled substance," §1101(a)(43)(B), which, as relevant here, includes the conviction of an offense that the Controlled Substances Act (CSA) makes punishable as a felony, *i.e.,* by more than one year's imprisonment, see 18 U. S. C. §§924(c)(2), 3559(a)(5).   A conviction under state law "constitutes a 'felony punishable under the [CSA]' only if it proscribes conduct punishable as a felony under that federal law." *Lopez* v. *Gonzales*, 549 U. S. 47, 60.

Petitioner Moncrieffe, a Jamaican citizen here legally, was found by police to have 1.3 grams of marijuana in his car.   He pleaded guilty under Georgia law to possession of marijuana with intent to distribute.   The Federal Government sought to deport him, reasoning that his conviction was an aggravated felony because possession of marijuana with intent to distribute is a CSA offense, 21 U. S. C. §841(a), punishable by up to five years' imprisonment, §841(b)(1)(D). An Immigration Judge ordered Moncrieffe removed, and the Board of Immigration Appeals affirmed.   The Fifth Circuit denied Moncrieffe's petition for review, rejecting his reliance on §841(b)(4), which makes marijuana distribution punishable as a misdemeanor if the offense involves a small amount for no remuneration, and holding that the felony provision, §841(b)(1)(D), provides the default punishment for his offense.

*Held:* If a noncitizen's conviction for a marijuana distribution offense fails to establish that the offense involved either remuneration or more than a small amount of marijuana, it is not an aggravated felony

under the INA.  Pp. 4–22.

   (a) Under the categorical approach generally employed to deter-
mine whether a state offense is comparable to an offense listed in the
INA, see, *e.g.*, *Nijhawan* v. *Holder*, 557 U. S. 29, 33–38, the nonciti-
zen's actual conduct is irrelevant.  Instead "the state statute defining
the crime of conviction" is examined to see whether it fits within the
"generic" federal definition of a corresponding aggravated felony.
*Gonzales* v. *Duenas-Alvarez*, 549 U. S. 183, 186.  The state offense is
a categorical match only if a conviction of that offense "'necessarily'
involved . . . facts equating to [the] generic [federal offense]."  *Shep-
ard* v. *United States*, 544 U. S. 13, 24.  Because this Court examines
what the state conviction necessarily involved and not the facts un-
derlying the case, it presumes that the conviction "rested upon [noth-
ing] more than the least of th[e] acts" criminalized, before determin-
ing whether even those acts are encompassed by the generic federal
offense.  *Johnson* v. *United States*, 559 U. S. 133, 137.  Pp. 4–6.

   (b) The categorical approach applies here because "illicit trafficking
in a controlled substance" is a "generic crim[e]."  *Nijhawan*, 557 U. S.,
at 37.  Thus, a state drug offense must meet two conditions: It must
"necessarily" proscribe conduct that is an offense under the CSA, and
the CSA must "necessarily" prescribe felony punishment for that
conduct.  Possession of marijuana with intent to distribute is clearly
a federal crime.  The question is whether Georgia law necessarily
proscribes conduct punishable as a felony under the CSA.  Title 21
U. S. C. §841(b)(1)(D) provides that, with certain exceptions, a viola-
tion of the marijuana distribution statute is punishable by "a term of
imprisonment of not more than 5 years."  However, one of those ex-
ceptions, §841(b)(4), provides that "any person who violates [the stat-
ute] by distributing a small amount of marihuana for no remunera-
tion shall be treated as" a simple drug possessor, *i.e.*, as a
misdemeanant.  These dovetailing provisions create two mutually ex-
clusive categories of punishment for CSA marijuana distribution of-
fenses: one a felony, the other not.  The fact of a conviction under
Georgia's statute, standing alone, does not reveal whether either re-
muneration or more than a small amount was involved, so
Moncrieffe's conviction could correspond to either the CSA felony or
the CSA misdemeanor.  Thus, the conviction did not "necessarily" in-
volve facts that correspond to an offense punishable as a felony under
the CSA.  Pp. 6–9.

   (c) The Government's contrary arguments are unpersuasive.  The
Government contends that §841(b)(4) is irrelevant because it is mere-
ly a mitigating sentencing factor, not an element of the offense.  But
that understanding is inconsistent with *Carachuri-Rosendo* v. *Hold-
er*, 560 U. S. ___, which recognized that when Congress has chosen to

Syllabus

define the generic federal offense by reference to punishment, it may be necessary to take account of federal sentencing factors too. The Government also asserts that any marijuana distribution conviction is presumptively a felony, but the CSA makes neither the felony nor the misdemeanor provision the default. The Government's approach would lead to the absurd result that a conviction under a statute that punishes misdemeanor conduct only, such as §841(b)(4) itself, would nevertheless be a categorical aggravated felony.

The Government's proposed remedy for this anomaly—that noncitizens be given an opportunity during immigration proceedings to demonstrate that their predicate marijuana distribution convictions involved only a small amount of marijuana and no remuneration—is inconsistent with both the INA's text and the categorical approach. The Government's procedure would require the Nation's overburdened immigration courts to conduct precisely the sort of *post hoc* investigation into the facts of predicate offenses long deemed undesirable, and would require uncounseled noncitizens to locate witnesses years after the fact.

Finally, the Government's concerns about the consequences of this decision are exaggerated. Escaping aggravated felony treatment does not mean escaping deportation, because any marijuana distribution offense will still render a noncitizen deportable as a controlled substances offender. Having been found not to be an aggravated felon, the noncitizen may seek relief from removal such as asylum or cancellation of removal, but the Attorney General may, in his discretion, deny relief if he finds that the noncitizen is actually a more serious drug trafficker. Pp. 9–21.

662 F. 3d 387, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, GINSBURG, BREYER, and KAGAN, JJ., joined. THOMAS, J., and ALITO, J., filed dissenting opinions.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

<hr>

No. 11–702

<hr>

## ADRIAN MONCRIEFFE, PETITIONER *v.* ERIC H. HOLDER, JR., ATTORNEY GENERAL

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[April 23, 2013]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

The Immigration and Nationality Act (INA), 66 Stat. 163, 8 U. S. C. §1101 *et seq.*, provides that a noncitizen who has been convicted of an "aggravated felony" may be deported from this country. The INA also prohibits the Attorney General from granting discretionary relief from removal to an aggravated felon, no matter how compelling his case. Among the crimes that are classified as aggravated felonies, and thus lead to these harsh consequences, are illicit drug trafficking offenses. We must decide whether this category includes a state criminal statute that extends to the social sharing of a small amount of marijuana. We hold it does not.

## I

### A

The INA allows the Government to deport various classes of noncitizens, such as those who overstay their visas, and those who are convicted of certain crimes while in the United States, including drug offenses. §1227. Ordinarily, when a noncitizen is found to be deportable on one of these grounds, he may ask the Attorney General for cer-

tain forms of discretionary relief from removal, like asy-
lum (if he has a well-founded fear of persecution in his
home country) and cancellation of removal (if, among
other things, he has been lawfully present in the United
States for a number of years). §§1158, 1229b. But if a
noncitizen has been convicted of one of a narrower set of
crimes classified as "aggravated felonies," then he is not
only deportable, §1227(a)(2)(A)(iii), but also ineligible for
these discretionary forms of relief. See §§1158(b)(2)(A)(ii),
(B)(i); §§1229b(a)(3), (b)(1)(C).[1]

   The INA defines "aggravated felony" to include a host of
offenses. §1101(a)(43). Among them is "illicit trafficking
in a controlled substance." §1101(a)(43)(B). This general
term is not defined, but the INA states that it "includ[es] a
drug trafficking crime (as defined in section 924(c) of title
18)." *Ibid.* In turn, 18 U. S. C. §924(c)(2) defines "drug
trafficking crime" to mean "any felony punishable under
the Controlled Substances Act," or two other statues
not relevant here. The chain of definitions ends with
§3559(a)(5), which provides that a "felony" is an offense for
which the "maximum term of imprisonment authorized" is
"more than one year." The upshot is that a noncitizen's
conviction of an offense that the Controlled Substances Act
(CSA) makes punishable by more than one year's impris-

——————
   [1] In addition to asylum, a noncitizen who fears persecution may seek
withholding of removal, 8 U. S. C. §1231(b)(3)(A), and deferral of
removal under the Convention Against Torture and Other Cruel,
Inhuman or Degrading Treatment or Punishment (CAT), Art. 3, Dec.
10, 1984, S. Treaty Doc. No. 100–20, p. 20, 1465 U. N. T. S. 85; 8 CFR
§1208.17(a) (2012). These forms of relief require the noncitizen to show
a greater likelihood of persecution or torture at home than is necessary
for asylum, but the Attorney General has no discretion to deny relief to
a noncitizen who establishes his eligibility. A conviction of an aggra-
vated felony has no effect on CAT eligibility, but will render a nonciti-
zen ineligible for withholding of removal if he "has been sentenced to an
aggregate term of imprisonment of at least 5 years" for any aggravated
felonies. 8 U. S. C. §1231(b)(3)(B).

onment will be counted as an "aggravated felony" for immigration purposes. A conviction under either state or federal law may qualify, but a "state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." *Lopez* v. *Gonzales*, 549 U. S. 47, 60 (2006).

## B

Petitioner Adrian Moncrieffe is a Jamaican citizen who came to the United States legally in 1984, when he was three. During a 2007 traffic stop, police found 1.3 grams of marijuana in his car. This is the equivalent of about two or three marijuana cigarettes. Moncrieffe pleaded guilty to possession of marijuana with intent to distribute, a violation of Ga. Code Ann. §16–13–30(j)(1) (2007). Under a Georgia statute providing more lenient treatment to first-time offenders, §42–8–60(a) (1997), the trial court withheld entering a judgment of conviction or imposing any term of imprisonment, and instead required that Moncrieffe complete five years of probation, after which his charge will be expunged altogether.[2] App. to Brief for Petitioner 11–15.

Alleging that this Georgia conviction constituted an aggravated felony, the Federal Government sought to deport Moncrieffe. The Government reasoned that possession of marijuana with intent to distribute is an offense under the CSA, 21 U. S. C. §841(a), punishable by up to five years' imprisonment, §841(b)(1)(D), and thus an aggravated felony. An Immigration Judge agreed and ordered Moncrieffe removed. App. to Pet. for Cert. 14a–18a. The Board of Immigration Appeals (BIA) affirmed that

---

[2] The parties agree that this resolution of Moncrieffe's Georgia case is nevertheless a "conviction" as the INA defines that term, 8 U. S. C. §1101(a)(48)(A). See Brief for Petitioner 6, n. 2; Brief for Respondent 5, n. 2.

conclusion on appeal. *Id.,* at 10a–13a.

The Court of Appeals denied Moncrieffe's petition for review. The court rejected Moncrieffe's reliance upon §841(b)(4), a provision that, in effect, makes marijuana distribution punishable only as a misdemeanor if the offense involves a small amount of marijuana for no remuneration. It held that in a federal criminal prosecution, "the default sentencing range for a marijuana distribution offense is the CSA's felony provision, §841(b)(1)(D), rather than the misdemeanor provision." 662 F. 3d 387, 392 (CA5 2011). Because Moncrieffe's Georgia offense penalized possession of marijuana with intent to distribute, the court concluded that it was "equivalent to a federal felony." *Ibid.*

We granted certiorari, 566 U. S. ___ (2012), to resolve a conflict among the Courts of Appeals with respect to whether a conviction under a statute that criminalizes conduct described by both §841's felony provision and its misdemeanor provision, such as a statute that punishes all marijuana distribution without regard to the amount or remuneration, is a conviction for an offense that "proscribes conduct punishable as a felony under" the CSA.[3] *Lopez*, 549 U. S., at 60. We now reverse.

## II
### A

When the Government alleges that a state conviction qualifies as an "aggravated felony" under the INA, we generally employ a "categorical approach" to determine whether the state offense is comparable to an offense listed in the INA. See, *e.g., Nijhawan* v. *Holder*, 557 U. S.

---

[3] Compare 662 F. 3d 387 (CA5 2011) (case below), *Garcia* v. *Holder*, 638 F. 3d 511 (CA6 2011) (is an aggravated felony), and *Julce* v. *Mukasey*, 530 F. 3d 30 (CA1 2008) (same), with *Martinez* v. *Mukasey*, 551 F. 3d 113 (CA2 2008) (is not an aggravated felony), and *Wilson* v. *Ashcroft*, 350 F. 3d 377 (CA3 2003) (same).

29, 33–38 (2009); *Gonzales* v. *Duenas-Alvarez*, 549 U. S. 183, 185–187 (2007). Under this approach we look "not to the facts of the particular prior case," but instead to whether "the state statute defining the crime of conviction" categorically fits within the "generic" federal definition of a corresponding aggravated felony. *Id.,* at 186 (citing *Taylor* v. *United States*, 495 U. S. 575, 599–600 (1990)). By "generic," we mean the offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison. Accordingly, a state offense is a categorical match with a generic federal offense only if a conviction of the state offense "'necessarily' involved . . . facts equating to [the] generic [federal offense]." *Shepard* v. *United States*, 544 U. S. 13, 24 (2005) (plurality opinion). Whether the noncitizen's actual conduct involved such facts "is quite irrelevant." *United States ex rel. Guarino* v. *Uhl*, 107 F. 2d 399, 400 (CA2 1939) (L. Hand, J.).

Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction "rested upon [nothing] more than the least of th[e] acts" criminalized, and then determine whether even those acts are encompassed by the generic federal offense. *Johnson* v. *United States*, 559 U. S. 133, 137 (2010); see *Guarino*, 107 F. 2d, at 400. But this rule is not without qualification. First, our cases have addressed state statutes that contain several different crimes, each described separately, and we have held that a court may determine which particular offense the noncitizen was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or "'some comparable judicial record' of the factual basis for the plea." *Nijhawan*, 557 U. S., at 35 (quoting *Shepard*, 544 U. S., at 26). Second, our focus on the minimum conduct criminalized by the state statute is not an invitation to apply "legal imagi-

nation" to the state offense; there must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Duenas-Alvarez*, 549 U. S., at 193.

This categorical approach has a long pedigree in our Nation's immigration law. See Das, The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law, 86 N. Y. U. L. Rev. 1669, 1688–1702, 1749–1752 (2011) (tracing judicial decisions back to 1913). The reason is that the INA asks what offense the noncitizen was "convicted" of, 8 U. S. C. §1227(a)(2)(A)(iii), not what acts he committed. "[C]onviction" is "the relevant statutory hook."[4] *Carachuri-Rosendo* v. *Holder*, 560 U. S. ___, ___ (2010) (slip op., at 16); see *United States ex rel. Mylius* v. *Uhl*, 210 F. 860, 862 (CA2 1914).

B

The aggravated felony at issue here, "illicit trafficking in a controlled substance," is a "generic crim[e]." *Nijhawan*, 557 U. S., at 37. So the categorical approach applies. *Ibid.* As we have explained, *supra,* at 2–3, this aggravated felony encompasses all state offenses that "proscrib[e] conduct punishable as a felony under [the CSA]." *Lopez*, 549 U. S., at 60. In other words, to satisfy the categorical approach, a state drug offense must meet two conditions: It must "necessarily" proscribe conduct that is an offense under the CSA, and the CSA must "necessarily" prescribe felony punishment for that conduct.

Moncrieffe was convicted under a Georgia statute that

_____

[4] *Carachuri-Rosendo* construed a different provision of the INA that concerns cancellation of removal, which also requires determining whether the noncitizen has been "*convicted* of any aggravated felony." 8 U. S. C. §1229b(a)(3) (emphasis added). Our analysis is the same in both contexts.

makes it a crime to "possess, have under [one's] control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana." Ga. Code Ann. §16–13–30(j)(1). We know from his plea agreement that Moncrieffe was convicted of the last of these offenses. App. to Brief for Petitioner 11; *Shepard*, 544 U. S., at 26. We therefore must determine whether possession of marijuana with intent to distribute is "necessarily" conduct punishable as a felony under the CSA.

We begin with the relevant conduct criminalized by the CSA. There is no question that it is a federal crime to "possess with intent to . . . distribute . . . a controlled substance," 21 U. S. C. §841(a)(1), one of which is marijuana, §812(c).[5] So far, the state and federal provisions correspond. But this is not enough, because the generically defined federal crime is "any felony punishable under the Controlled Substances Act," 18 U. S. C. §924(c)(2), not just any "offense under the CSA." Thus we must look to what punishment the CSA imposes for this offense.

Section 841 is divided into two subsections that are relevant here: (a), titled "Unlawful acts," which includes the offense just described, and (b), titled "Penalties." Subsection (b) tells us how "any person who violates subsection (a)" shall be punished, depending on the circumstances of his crime (*e.g.,* the type and quantity of controlled substance involved, whether it is a repeat offense).[6]

————————

[5] In full, 21 U. S. C. §841(a)(1) provides,

"Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

"(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ."

[6] In pertinent part, §§841(b)(1)(D) and (b)(4) (2006 ed. and Supp. V) provide,

"Except as otherwise provided in section 849, 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

.     .     .     .     .

Subsection (b)(1)(D) provides that if a person commits a violation of subsection (a) involving "less than 50 kilograms of marihuana," then "such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years," *i.e.,* as a felon. But one of the exceptions is important here. Paragraph (4) provides, "Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as" a simple drug possessor, 21 U. S. C. §844, which for our purposes means as a misdemeanant.[7] These dovetailing provisions create two mutually exclusive categories of punishment for CSA marijuana distribution offenses: one

---

"[(1)](D) In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight, 10 kilograms of hashish, or one kilogram of hashish oil, such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. . . .

.          .          .          .          .

"(4) Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of title 18."

[7] Although paragraph (4) speaks only of "distributing" marijuana, the parties agree that it also applies to "the more inchoate offense of possession with intent to distribute that drug." *Matter of Castro Rodriguez*, 25 I. & N. Dec. 698, 699, n. 2 (BIA 2012); see Brief for Petitioner 6, n. 2; Brief for Respondent 8, n. 5.

The CSA does not define "small amount." The BIA has suggested that 30 grams "serve[s] as a useful guidepost," *Castro Rodriguez*, 25 I. & N. Dec., at 703, noting that the INA exempts from deportable controlled substances offenses "a single offense involving possession for one's own use of 30 grams or less of marijuana," 8 U. S. C. §1227(a)(2)(B)(i). The meaning of "small amount" is not at issue in this case, so we need not, and do not, define the term.

a felony, and one not. The only way to know whether a marijuana distribution offense is "punishable as a felony" under the CSA, *Lopez*, 549 U. S., at 60, is to know whether the conditions described in paragraph (4) are present or absent.

A conviction under the same Georgia statute for "sell[ing]" marijuana, for example, would seem to establish remuneration. The presence of remuneration would mean that paragraph (4) is not implicated, and thus that the conviction is necessarily for conduct punishable as a felony under the CSA (under paragraph (1)(D)). In contrast, the fact of a conviction for possession with intent to distribute marijuana, standing alone, does not reveal whether either remuneration or more than a small amount of marijuana was involved. It is possible neither was; we know that Georgia prosecutes this offense when a defendant possesses only a small amount of marijuana, see, *e.g., Taylor* v. *State*, 260 Ga. App. 890, 581 S. E. 2d 386, 388 (2003) (6.6 grams), and that "distribution" does not require remuneration, see, *e.g., Hadden* v. *State*, 181 Ga. App. 628, 628–629, 353 S. E. 2d 532, 533–534 (1987). So Moncrieffe's conviction could correspond to either the CSA felony or the CSA misdemeanor. Ambiguity on this point means that the conviction did not "necessarily" involve facts that correspond to an offense punishable as a felony under the CSA. Under the categorical approach, then, Moncrieffe was not convicted of an aggravated felony.

## III

### A

The Government advances a different approach that leads to a different result. In its view, §841(b)(4)'s misdemeanor provision is irrelevant to the categorical analysis because paragraph (4) is merely a "mitigating exception," to the CSA offense, not one of the "elements" of the offense. Brief for Respondent 12. And because possession

with intent to distribute marijuana is "presumptive[ly]" a felony under the CSA, the Government asserts, any state offense with the same elements is presumptively an aggravated felony. *Id.,* at 37. These two contentions are related, and we reject both of them.

First, the Government reads our cases to hold that the categorical approach is concerned only with the "elements" of an offense, so §841(b)(4) "is not relevant" to the categorical analysis. *Id.*, at 20. It is enough to satisfy the categorical inquiry, the Government suggests, that the "elements" of Moncrieffe's Georgia offense are the same as those of the CSA offense: (1) possession (2) of marijuana (a controlled substance), (3) with intent to distribute it. But that understanding is inconsistent with *Carachuri-Rosendo*, our only decision to address both "elements" and "sentencing factors." There we recognized that when Congress has chosen to define the generic federal offense by reference to punishment, it may be necessary to take account of federal sentencing factors too. See 560 U. S., at ___ (slip op., at 3). In that case the relevant CSA offense was simple possession, which "becomes a 'felony punishable under the [CSA]' only because the sentencing factor of recidivism authorizes additional punishment beyond one year, the criterion for a felony." *Id.,* at ___ (SCALIA, J., concurring in judgment) (slip op., at 2). We therefore called the generic federal offense "recidivist simple possession," even though such a crime is not actually "a separate offense" under the CSA, but rather an "'amalgam'" of offense elements and sentencing factors. *Id.,* at ___, and n. 3, ___ (majority opinion) (slip op., at 3, and n. 3, 7).

In other words, not only must the state offense of conviction meet the "elements" of the generic federal offense defined by the INA, but the CSA must punish that offense as a felony. Here, the facts giving rise to the CSA offense establish a crime that may be either a felony or a misdemeanor, depending upon the presence or absence of cer-

tain factors that are not themselves elements of the crime. And so to qualify as an aggravated felony, a conviction for the predicate offense must necessarily establish those factors as well.

The Government attempts to distinguish *Carachuri-Rosendo* on the ground that the sentencing factor there was a "narrow" aggravating exception that turned a misdemeanor into a felony, whereas here §841(b)(4) is a narrow mitigation exception that turns a felony into a misdemeanor. Brief for Respondent 40–43. This argument hinges upon the Government's second assertion: that any marijuana distribution conviction is "presumptively" a felony. But that is simply incorrect, and the Government's argument collapses as a result. Marijuana distribution is neither a felony nor a misdemeanor until we know whether the conditions in paragraph (4) attach: Section 841(b)(1)(D) makes the crime punishable by five years' imprisonment "*except* as provided" in paragraph (4), and §841(b)(4) makes it punishable as a misdemeanor "*[n]otwithstanding* paragraph (1)(D)" when only "a small amount of marihuana for no remuneration" is involved. (Emphasis added.) The CSA's text makes neither provision the default. Rather, each is drafted to be exclusive of the other.

Like the BIA and the Fifth Circuit, the Government believes the felony provision to be the default because, in practice, that is how federal criminal prosecutions for marijuana distribution operate. See 662 F. 3d, at 391–392; *Matter of Aruna*, 24 I. & N. Dec. 452, 456–457 (2008); Brief for Respondent 18–23. It is true that every Court of Appeals to have considered the question has held that a defendant is eligible for a 5-year sentence under §841(b)(1)(D) if the Government proves he possessed marijuana with the intent to distribute it, and that the Government need not negate the §841(b)(4) factors in each case. See*, e.g., United States* v. *Outen*, 286 F. 3d 622, 636–

639 (CA2 2002) (describing §841(b)(4) as a "mitigating exception"); *United States* v. *Hamlin*, 319 F. 3d 666, 670–671 (CA4 2003) (collecting cases). Instead, the burden is on the defendant to show that he qualifies for the lesser sentence under §841(b)(4). Cf. *id.,* at 671.

We cannot discount §841's text, however, which creates no default punishment, in favor of the procedural overlay or burdens of proof that would apply in a hypothetical federal criminal prosecution. In *Carachuri-Rosendo*, we rejected the Fifth Circuit's "'hypothetical approach,'" which examined whether conduct "'could have been punished as a felony' 'had [it] been prosecuted in federal court.'" 560 U. S., at ___, ___ (slip op., at 8, 11).[8] The outcome in a hypothetical prosecution is not the relevant inquiry. Rather, our "more focused, categorical inquiry" is whether the record of conviction of the predicate offense necessarily establishes conduct that the CSA, on its own terms, makes punishable as a felony. *Id.,* at ___ (slip op., at 16).

The analogy to a federal prosecution is misplaced for another reason. The Court of Appeals cases the Government cites distinguished between elements and sentencing factors to determine which facts must be proved to a jury,

──────────

[8]JUSTICE ALITO states that the statute "obviously" requires examination of whether "conduct associated with the state offense . . . *would have* supported a qualifying conviction under the federal CSA." *Post,* at 3 (dissenting opinion) (emphasis added); see also *post,* at 8. But this echoes the Fifth Circuit's approach in *Carachuri-Rosendo*. As noted in the text, our opinion explicitly rejected such reasoning based on conditional perfect formulations. See also, *e.g., Carachuri-Rosendo*, 560 U. S., at ___ (slip op., at 16) (criticizing approach that "focuses on facts known to the immigration court that *could have* but did not serve as the basis for the state conviction and punishment" (emphasis altered)). Instead, as we have explained, *supra,* at 10–11, our holding depended upon the fact that Carachuri-Rosendo's conviction did not establish the fact necessary to distinguish between misdemeanor and felony punishment under the CSA. The same is true here.

in light of the Sixth Amendment concerns addressed in *Apprendi* v. *New Jersey*, 530 U. S. 466 (2000). The courts considered which "provision . . . states a complete crime upon the fewest *facts*," *Outen*, 286 F. 3d, at 638, which was significant after *Apprendi* to identify what a jury had to find before a defendant could receive §841(b)(1)(D)'s maximum 5-year sentence. But those concerns do not apply in this context. Here we consider a "generic" federal offense in the abstract, not an actual federal offense being prosecuted before a jury. Our concern is only which facts the CSA relies upon to distinguish between felonies and misdemeanors, not which facts must be found by a jury as opposed to a judge, nor who has the burden of proving which facts in a federal prosecution.[9]

Because of these differences, we made clear in *Carachuri-Rosendo* that, for purposes of the INA, a generic federal offense may be defined by reference to both "'elements' in the traditional sense" and sentencing factors. 560 U. S., at \_\_\_, n. 3, \_\_\_ (slip op., at 3, n. 3, 7); see also *id.,* at \_\_\_ (SCALIA, J., concurring in judgment) (slip op., at 3) (describing the generic federal offense there as "the Controlled Substances Act felony of possession-plus-recidivism"). Indeed, the distinction between "elements" and "sentencing factors" did not exist when Congress added illicit drug trafficking to the list of aggravated felonies, Anti-Drug Abuse Act of 1988, 102 Stat. 4469–4470, and most courts at the time understood both §841(b)(1)(D) and §841(b)(4) to contain sentencing factors

———————

[9] The Government also cites 21 U. S. C. §885(a)(1), which provides that the Government need not "negative any exemption or exception set forth" in the CSA, and instead "the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit." Brief for Respondent 21. Even assuming §841(b)(4) is such an "exception," §885(a)(1) applies, by its own terms, only to "any trial, hearing, or other proceeding under" the CSA itself, not to the rather different proceedings under the INA.

that draw the line between a felony and a misdemeanor. See, *e.g., United States* v. *Campuzano*, 905 F. 2d 677, 679 (CA2 1990). *Carachuri-Rosendo* controls here.

Finally, there is a more fundamental flaw in the Government's approach: It would render even an undisputed misdemeanor an aggravated felony. This is "just what the English language tells us not to expect," and that leaves us "very wary of the Government's position." *Lopez*, 549 U. S., at 54. Consider a conviction under a New York statute that provides, "A person is guilty of criminal sale of marihuana in the fifth degree when he knowingly and unlawfully sells, *without consideration*, [marihuana] of an aggregate weight of *two grams or less*; or one cigarette containing marihuana." N. Y. Penal Law Ann. §221.35 (West 2008) (emphasis added). This statute criminalizes only the distribution of a small amount of marijuana for no remuneration, and so all convictions under the statute would fit within the CSA misdemeanor provision, §841(b)(4). But the Government would categorically deem a conviction under this statute to be an aggravated felony, because the statute contains the corresponding "elements" of (1) distributing (2) marijuana, and the Government believes all marijuana distribution offenses are punishable as felonies.

The same anomaly would result in the case of a noncitizen convicted of a misdemeanor in federal court under §§841(a) and (b)(4) directly. Even in that case, under the Government's logic, we would need to treat the federal misdemeanor conviction as an aggravated felony, because the conviction establishes elements of an offense that is presumptively a felony. This cannot be. "We cannot imagine that Congress took the trouble to incorporate its own statutory scheme of felonies and misdemeanors," only to have courts presume felony treatment and ignore the very factors that distinguish felonies from misdemeanors. *Lopez*, 549 U. S., at 58.

B

Recognizing that its approach leads to consequences Congress could not have intended, the Government hedges its argument by proposing a remedy: Noncitizens should be given an opportunity during immigration proceedings to demonstrate that their predicate marijuana distribution convictions involved only a small amount of marijuana and no remuneration, just as a federal criminal defendant could do at sentencing. Brief for Respondent 35–39. This is the procedure adopted by the BIA in *Matter of Castro Rodriguez*, 25 I. & N. Dec. 698, 702 (2012), and endorsed by JUSTICE ALITO's dissent, *post,* at 11–12.

This solution is entirely inconsistent with both the INA's text and the categorical approach. As noted, the relevant INA provisions ask what the noncitizen was "convicted of," not what he did, and the inquiry in immigration proceedings is limited accordingly. 8 U. S. C. §§1227(a)(2)(A)(iii), 1229b(a)(3); see *Carachuri-Rosendo*, 560 U. S., at ___ (slip op., at 11). The Government cites no statutory authority for such case-specific factfinding in immigration court, and none is apparent in the INA. Indeed, the Government's main categorical argument would seem to preclude this inquiry: If the Government were correct that "the fact of a marijuana-distribution conviction *alone* constitutes a CSA felony," Brief for Respondent 37, then all marijuana distribution convictions would categorically be convictions of the drug trafficking aggravated felony, mandatory deportation would follow under the statute, and there would be no room for the Government's follow-on factfinding procedure. The Government cannot have it both ways.

Moreover, the procedure the Government envisions would require precisely the sort of *post hoc* investigation into the facts of predicate offenses that we have long deemed undesirable. The categorical approach serves "practical" purposes: It promotes judicial and administra-

tive efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact. *Chambers* v. *United States*, 555 U. S. 122, 125 (2009); see also *Mylius*, 210 F., at 862–863. Yet the Government's approach would have our Nation's overburdened immigration courts entertain and weigh testimony from, for example, the friend of a noncitizen who may have shared a marijuana cigarette with him at a party, or the local police officer who recalls to the contrary that cash traded hands. And, as a result, two noncitizens, each "convicted of" the same offense, might obtain different aggravated felony determinations depending on what evidence remains available or how it is perceived by an individual immigration judge. The categorical approach was designed to avoid this "potential unfairness." *Taylor*, 495 U. S., at 601; see also *Mylius*, 210 F., at 863.

Furthermore, the minitrials the Government proposes would be possible only if the noncitizen could locate witnesses years after the fact, notwithstanding that during removal proceedings noncitizens are not guaranteed legal representation and are often subject to mandatory detention, §1226(c)(1)(B), where they have little ability to collect evidence. See Katzmann, The Legal Profession and the Unmet Needs of the Immigrant Poor, 21 Geo. J. Legal Ethics 3, 5–10 (2008); Brief for National Immigrant Justice Center et al. as *Amici Curiae* 5–18; Brief for Immigration Law Professors as *Amici Curiae* 27–32. A noncitizen in removal proceedings is not at all similarly situated to a defendant in a federal criminal prosecution. The Government's suggestion that the CSA's procedures could readily be replicated in immigration proceedings is therefore misplaced. Cf. *Carachuri-Rosendo*, 560 U. S., at ___ (slip op., at 14–15) (rejecting the Government's argument that procedures governing determination of the recidivism sentencing factor could "be satisfied during the immigration proceeding").

The Government defends its proposed immigration court proceedings as "a subsequent step *outside the categorical approach* in light of Section 841(b)(4)'s 'circumstance-specific' nature." Brief for Respondent 37. This argument rests upon *Nijhawan*, in which we considered another aggravated felony, "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U. S. C. §1101(a)(43)(M)(i). We held that the $10,000 threshold was not to be applied categorically as a required component of a generic offense, but instead called for a "circumstance-specific approach" that allows for an examination, in immigration court, of the "particular circumstances in which an offender committed the crime on a particular occasion." *Nijhawan*, 557 U. S., at 38–40. The Government suggests the §841(b)(4) factors are like the monetary threshold, and thus similarly amenable to a circumstance-specific inquiry.

We explained in *Nijhawan*, however, that unlike the provision there, "illicit trafficking in a controlled substance" is a "generic crim[e]" to which the categorical approach applies, not a circumstance-specific provision. *Id.*, at 37; see also *Carachuri-Rosendo*, 560 U. S., at \_\_\_, n. 11 (slip op., at 12–13, n. 11). That distinction is evident in the structure of the INA. The monetary threshold is a limitation, written into the INA itself, on the scope of the aggravated felony for fraud. And the monetary threshold is set off by the words "in which," which calls for a circumstance-specific examination of "the conduct involved '*in*' the commission of the offense of conviction." *Nijhawan*, 557 U. S., at 39. Locating this exception in the INA proper suggests an intent to have the relevant facts found in immigration proceedings. But where, as here, the INA incorporates other criminal statutes wholesale, we have held it "must refer to generic crimes," to which the categorical approach applies. *Id.,* at 37.

Finally, the Government suggests that the immigration

court's task would not be so daunting in some cases, such as those in which a noncitizen was convicted under the New York statute previously discussed or convicted directly under §841(b)(4). True, in those cases, the record of conviction might reveal on its face that the predicate offense was punishable only as a misdemeanor. But most States do not have stand-alone offenses for the social sharing of marijuana, so minitrials concerning convictions from the other States, such as Georgia, would be inevitable.[10] The Government suggests that even in these other States, the record of conviction may often address the §841(b)(4) factors, because noncitizens "will be advised of the immigration consequences of a conviction," as defense counsel is required to do under *Padilla* v. *Kentucky*, 559 U. S. 359 (2010), and as a result counsel can build an appropriate record when the facts are fresh. Brief for Respondent 38. Even assuming defense counsel "will" do something simply because it is required of effective counsel (an assumption experience does not always bear out), this argument is unavailing because there is no reason to believe that state courts will regularly or uniformly admit evidence going to facts, such as remuneration, that are irrelevant to the offense charged.

In short, to avoid the absurd consequences that would flow from the Government's narrow understanding of the categorical approach, the Government proposes a solution

--------

[10] In addition to New York, it appears that 13 other States have separate offenses for §841(b)(4) conduct. See Cal. Health & Safety Code Ann. §11360(b) (West Supp. 2013); Colo. Rev. Stat. Ann. §18–18–406(5) (2012); Fla. Stat. §893.13(2)(b)(3) (2010); Ill. Comp. Stat., ch. 20, §§550/3, 550/4, 550/6 (West 2010); Iowa Code §124.410 (2009); Minn. Stat. §152.027(4)(a) (2010); N. M. Stat. Ann. §30–31–22(E) (Supp. 2011); Ohio Rev. Code Ann. §2925.03(C)(3)(h) (Lexis 2012 Cum. Supp.); Ore. Rev. Stat. §475.860(3) (2011); Pa. Stat. Ann., Tit. 35, §780–113(a)(31) (Purdon Supp. 2012); S. D. Codified Laws §22–42–7 (Supp. 2012); Tex. Health & Safety Code Ann. §481.120(b)(1) (West 2010); W. Va. Code Ann. §60A–4–402(c) (Lexis 2010).

that largely undermines the categorical approach. That the only cure is worse than the disease suggests the Government is simply wrong.

C

The Government fears the consequences of our decision, but its concerns are exaggerated. The Government observes that, like Georgia, about half the States criminalize marijuana distribution through statutes that do not require remuneration or any minimum quantity of marijuana. *Id.,* at 26–28. As a result, the Government contends, noncitizens convicted of marijuana distribution offenses in those States will avoid "aggravated felony" determinations, purely because their convictions do not resolve whether their offenses involved federal felony conduct or misdemeanor conduct, even though many (if not most) prosecutions involve either remuneration or larger amounts of marijuana (or both).

Escaping aggravated felony treatment does not mean escaping deportation, though. It means only avoiding mandatory removal. See *Carachuri-Rosendo*, 560 U. S., at ___ (slip op., at 17). Any marijuana distribution offense, even a misdemeanor, will still render a noncitizen deportable as a controlled substances offender. 8 U. S. C. §1227(a)(2)(B)(i). At that point, having been found not to be an aggravated felon, the noncitizen may seek relief from removal such as asylum or cancellation of removal, assuming he satisfies the other eligibility criteria. §§1158(b), 1229b(a)(1)–(2). But those forms of relief are discretionary. The Attorney General may, in his discretion, deny relief if he finds that the noncitizen is actually a member of one "of the world's most dangerous drug cartels," *post,* at 2 (opinion of ALITO, J.), just as he may deny relief if he concludes the negative equities outweigh the positive equities of the noncitizen's case for other reasons. As a result, "to the extent that our rejection of the Gov-

ernment's broad understanding of the scope of 'aggravated felony' may have any practical effect on policing our Nation's borders, it is a limited one." *Carachuri-Rosendo*, 560 U. S., at ___ (slip op., at 17).

In any event, serious drug traffickers may be adjudicated aggravated felons regardless, because they will likely be convicted under greater "trafficking" offenses that necessarily establish that more than a small amount of marijuana was involved. See, *e.g.,* Ga. Code Ann. §16–13–31(c)(1) (Supp. 2012) (separate provision for trafficking in more than 10 pounds of marijuana). Of course, some offenders' conduct will fall between §841(b)(4) conduct and the more serious conduct required to trigger a "trafficking" statute. Brief for Respondent 30. Those offenders may avoid aggravated felony status by operation of the categorical approach. But the Government's objection to that underinclusive result is little more than an attack on the categorical approach itself.[11] We prefer this degree of imperfection to the heavy burden of relitigating old prosecutions. See *supra,* at 15–16. And we err on the side of underinclusiveness because ambiguity in criminal statutes

————————

[11] Similarly, JUSTICE ALITO's dissent suggests that he disagrees with the first premises of the categorical approach. He says it is a "strange and disruptive resul[t]" that "defendants convicted in different States for committing the same criminal conduct" might suffer different collateral consequences depending upon how those States define their statutes of conviction. *Post,* at 9. Yet that is the longstanding, natural result of the categorical approach, which focuses not on the criminal conduct a defendant "commit[s]," but rather what facts are necessarily established by a conviction for the state offense. Different state offenses will necessarily establish different facts. Some will track the "uniform" federal definition of the generic offense, and some will not. *Taylor* v. *United States*, 495 U. S. 575, 590 (1990). Whatever disparity this may create as between defendants whose real-world conduct was the same, it ensures that all defendants whose convictions establish the same facts will be treated consistently, and thus predictably, under federal law. This was *Taylor*'s chief concern in adopting the categorical approach. See *id.,* at 599–602.

referenced by the INA must be construed in the nonciti-
zen's favor. See *Carachuri-Rosendo*, 560 U. S., at ___ (slip
op., at 17); *Leocal* v. *Ashcroft*, 543 U. S. 1, 11, n. 8 (2004).

Finally, the Government suggests that our holding will
frustrate the enforcement of other aggravated felony
provisions, like §1101(a)(43)(C), which refers to a federal
firearms statute that contains an exception for "antique
firearm[s]," 18 U. S. C. §921(a)(3). The Government fears
that a conviction under any state firearms law that lacks
such an exception will be deemed to fail the categorical
inquiry. But *Duenas-Alvarez* requires that there be "a
realistic probability, not a theoretical possibility, that the
State would apply its statute to conduct that falls outside
the generic definition of a crime." 549 U. S., at 193. To
defeat the categorical comparison in this manner, a non-
citizen would have to demonstrate that the State actu-
ally prosecutes the relevant offense in cases involving an-
tique firearms. Further, the Government points to
§1101(a)(43)(P), which makes passport fraud an aggravat-
ed felony, except when the noncitizen shows he committed
the offense to assist an immediate family member. But
that exception is provided in the INA itself. As we held in
*Nijhawan*, a circumstance-specific inquiry would apply to
that provision, so it is not comparable. 557 U. S., at
37–38.

*     *     *

This is the third time in seven years that we have con-
sidered whether the Government has properly character-
ized a low-level drug offense as "illicit trafficking in a
controlled substance," and thus an "aggravated felony."
Once again we hold that the Government's approach defies
"the 'commonsense conception'" of these terms. *Carachuri-
Rosendo*, 560 U. S., at ___ (slip op., at 9) (quoting
*Lopez*, 549 U. S., at 53). Sharing a small amount of mari-
juana for no remuneration, let alone possession with

intent to do so, "does not fit easily into the 'everyday un-
derstanding'" of "trafficking," which "'ordinarily . . . means
some sort of commercial dealing.'"    *Carachuri-Rosendo*,
560 U. S., at ___ (slip op., at 9) (quoting *Lopez*, 549 U. S.,
at 53–54).    Nor is it sensible that a state statute that
criminalizes conduct that the CSA treats as a misde-
meanor should be designated an "aggravated felony."  We hold
that it may not be.  If a noncitizen's conviction for a mari-
juana distribution offense fails to establish that the of-
fense involved either remuneration or more than a small
amount of marijuana, the conviction is not for an aggra-
vated felony under the INA.  The contrary judgment of the
Court of Appeals is reversed, and the case is remanded for
further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–702

_____

## ADRIAN MONCRIEFFE, PETITIONER *v.* ERIC H. HOLDER, JR., ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[April 23, 2013]

JUSTICE THOMAS, dissenting.

A plain reading of 18 U. S. C. §924(c)(2) identifies two requirements that must be satisfied for a state offense to qualify as a "felony punishable under the Controlled Substances Act [(CSA)]." "First, the offense must be a felony; second, the offense must be capable of punishment under the [CSA]." *Lopez* v. *Gonzales*, 549 U. S. 47, 61 (2006) (THOMAS, J., dissenting). Moncrieffe's offense of possession of marijuana with intent to distribute satisfies both elements. No one disputes that Georgia punishes Moncrieffe's offense as a felony. See Ga. Code Ann. §16–13–30(j)(2) (Supp. 2012). ("Except as otherwise provided in subsection (c) of Code Section 16–13–31 or in Code Section 16–13–2, any person who violates this subsection shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than one year nor more than ten years").[1] And, the offense is "pun-

_____

[1] Section 16–13–31(c) (Supp. 2012) increases the punishment for trafficking in marijuana, while §16–13–2(b) (2011) decreases the punishment for simple possession of 1 ounce or less of marijuana. Neither provision is applicable to Moncrieffe's offense of possession of marijuana with intent to distribute.

The Court correctly points out that Moncrieffe was sentenced pursuant to §16–13–2(a) because he was a first-time offender. *Ante,* at 3. That provision does not alter the felony status of the offense. Rather, it

ishable under the [CSA]," 18 U. S. C. §924(c)(2), because it involved "possess[ion] with intent to manufacture, distribute, or dispense, a controlled substance," 21 U. S. C. §841(a)(1). Accordingly, Moncrieffe's offense is a "drug trafficking crime," 18 U. S. C. §924(c)(2), which constitutes an "aggravated felony" under the Immigration and Nationality Act (INA), 8 U. S. C. §1101(a)(43)(B).[2]

The Court rejected the plain meaning of 18 U. S. C. §924(c)(2) in *Lopez.* 549 U. S., at 50. There, the defendant was convicted of a state felony, but his offense would have been a misdemeanor under the CSA. *Id.,* at 53. The Court held that the offense did not constitute a "'felony punishable under the [CSA]'" because it was not "punishable *as a felony* under that federal law." *Id.,* at 60 (quoting §924(c)(2); emphasis added). I dissented in *Lopez* and warned that an inquiry into whether a state offense would constitute a felony in a hypothetical federal prosecution would cause "significant inconsistencies." *Id.,* at 63. I explained that one such inconsistency would arise if an alien defendant never convicted of an actual state felony were subject to deportation based on a hypothetical federal prosecution. *Id.,* at 67.

This precise issue arose in *Carachuri-Rosendo* v. *Holder*, 560 U. S. ___ (2010). Instead of following the logic of *Lopez*, however, the Court contorted the law to avoid the

———————

gives courts discretion to impose probation instead of imprisonment and to do so without entering a conviction. As the majority recognizes, petitioner has waived any argument that he was not convicted for purposes of the Immigration and Nationality Act. *Ante*, at 3, n. 2.

[2] See 8 U. S. C. §1227(a)(2)(A)(iii) (providing that aliens convicted of an "aggravated felony" after admission are deportable); §1229b(a)(3) (providing that aliens convicted of an "aggravated felony" are ineligible for cancellation of removal); §1101(a)(43)(B) (defining "aggravated felony" as "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in [18 U. S. C. §924(c)])"); 18 U. S. C. §924(c)(2) (defining "drug trafficking crime" as "any felony punishable under the [CSA]").

harsh result compelled by that decision. In *Carachuri-Rosendo*, the defendant was convicted of a crime that the State categorized as a misdemeanor, but his offense would have been a felony under the CSA because he had a prior conviction. 560 U. S., at \_\_\_ (slip op., at \_\_\_). The Court held that the offense did not constitute an "aggravated felony" because the state prosecutor had not charged the existence of a prior conviction and, thus, the defendant was not "*actually convicted* of a crime that is itself punishable as a felony under federal law." *Id.,* at \_\_\_ (slip op., at 17). Concurring in the judgment, I explained that the Court's decision was inconsistent with *Lopez* because the defendant's conduct was punishable as a felony under the CSA, but that *Lopez* was wrongly decided and that a proper reading of §924(c)(2) supported the Court's result. 560 U. S., at \_\_\_ (slip op., at 1). Carachuri-Rosendo's crime of conviction was a state-law misdemeanor and, as a result, it did not qualify as a "felony punishable under the [CSA]." See *ibid.*

I declined to apply *Lopez* in *Carachuri-Rosendo*, and I am unwilling to apply it here. Indeed, the Court itself declined to follow the logic of *Lopez* to its natural end in *Carachuri-Rosendo*. And, now the majority's ill-advised approach once again leads to an anomalous result. It is undisputed that, for federal sentencing purposes, Moncrieffe's offense would constitute a federal felony unless he could prove that he distributed only a small amount of marijuana for no remuneration. Cf. *United States* v. *Outen*, 286 F. 3d 622, 637–639 (CA2 2002) (Sotomayor, J.) (agreeing with the Government that 21 U. S. C. §841(b)(4) is a mitigating exception to the "default provision" under §841(b)(1)(D) and that it need not negate the §841(b)(4) factors to support a sentence under §841(b)(1)(D)). But, the Court holds that, for purposes of the INA, Moncrieffe's offense would necessarily correspond to a federal misdemeanor, regardless of whether he could

in fact prove that he distributed only a small amount of marijuana for no remuneration. *Ante,* at 11 (asserting that neither §841(b)(1)(D) nor §841(b)(4) is the "default" provision). The Court's decision, thus, has the effect of treating a substantial number of state felonies as federal misdemeanors, even when they would result in federal felony convictions.

The majority notes that "[t]his is the third time in seven years that we have considered whether the Government has properly characterized a low-level drug offense as . . . an 'aggravated felony.' " *Ante*, at 20–21. The Court has brought this upon itself. The only principle uniting *Lopez*, *Carachuri-Rosendo*, and the decision today appears to be that the Government consistently loses. If the Court continues to disregard the plain meaning of §924(c)(2), I expect that these types of cases will endlessly—and need-lessly—recur.

I respectfully dissent.

# SUPREME COURT OF THE UNITED STATES

———————

No. 11–702

———————

## ADRIAN MONCRIEFFE, PETITIONER *v.* ERIC H. HOLDER, JR., ATTORNEY GENERAL

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[April 23, 2013]

JUSTICE ALITO, dissenting.

The Court's decision in this case is not supported by the language of the Immigration and Nationality Act (INA) or by this Court's precedents, and it leads to results that Congress clearly did not intend.

Under the INA, aliens[1] who are convicted of certain offenses may be removed from this country, 8 U. S. C. §1227(a)(2) (2006 ed. and Supp. V), but in many instances, the Attorney General (acting through the Board of Immigration Appeals (BIA)) has the discretion to cancel removal, §§1229b(a), (b). Aliens convicted of especially serious crimes, however, are ineligible for cancellation of removal. §1229b(a)(3) (2006 ed.). Among the serious crimes that carry this consequence is "illicit trafficking in a controlled substance." §1101(a)(43)(B).

Under the Court's holding today, however, drug traffickers in about half the States are granted a dispensation. In those States, even if an alien is convicted of possessing tons of marijuana with the intent to distribute, the alien is

———————

[1] "Alien" is the term used in the relevant provisions of the Immigration and Nationality Act, and this term does not encompass all noncitizens. Compare 8 U. S. C. §1101(a)(3) (defining "alien" to include "any person not a citizen or national of the United States") with §1101(a)(22) (defining "national of the United States"). See also *Miller* v. *Albright*, 523 U. S. 420, 467, n. 2 (1998) (GINSBURG, J., dissenting).

eligible to remain in this country. Large-scale marijuana distribution is a major source of income for some of the world's most dangerous drug cartels, Dept. of Justice, National Drug Intelligence Center, National Drug Threat Assessment 2, 7 (2011), but the Court now holds that an alien convicted of participating in such activity may petition to remain in this country.

The Court's decision also means that the consequences of a conviction for illegal possession with intent to distribute will vary radically depending on the State in which the case is prosecuted. Consider, for example, an alien who is arrested near the Georgia-Florida border in possession of a large supply of marijuana. Under the Court's holding, if the alien is prosecuted and convicted in Georgia for possession with intent to distribute, he is eligible for cancellation of removal. But if instead he is caught on the Florida side of the line and is convicted in a Florida court—where possession with intent to distribute a small amount of marijuana for no remuneration is covered by a separate statutory provision, compare Fla. Stat. §893.13(3) (2010) with §893.13(1)(a)(2)—the alien is likely to be ineligible. Can this be what Congress intended?

## I

Certainly the text of the INA does not support such a result. In analyzing the relevant INA provisions, the starting point is 8 U. S. C. §1229b(a)(3), which provides that a lawful permanent resident alien subject to removal may apply for discretionary cancellation of removal if he has not been convicted of any "aggravated felony." The term "aggravated felony" encompasses "illicit tracking in a controlled substance . . . including a drug trafficking crime (as defined in [18 U. S. C. §924(c)])." 8 U. S. C. §1101(a)(43)(B). And this latter provision defines a "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act (21 U. S. C. 801 et seq.)."

18 U. S. C. §924(c)(2). Thus "any felony punishable under the [CSA]" is an "aggravated felony."

Where an alien has a prior federal conviction, it is a straightforward matter to determine whether the conviction was for a "felony punishable under the [CSA]." But 8 U. S. C. §1101(a)(43) introduces a complication. That provision states that the statutory definition of "aggravated felony" "applies to an offense described in this paragraph *whether in violation of Federal or State law*." (Emphasis added.) As noted, the statutory definition of "aggravated felony" includes a "felony punishable under the [CSA]," and therefore §1101(a)(43)(B) makes it necessary to determine what is meant by a state "offense" that is a "felony punishable under the [CSA]."

What §1101(a)(43) obviously contemplates is that the BIA or a court will identify conduct associated with the state offense and then determine whether that conduct would have supported a qualifying conviction under the federal CSA.[2] Identifying and evaluating this relevant conduct is the question that confounds the Court's analysis. Before turning to that question, however, some preliminary principles should be established.

————————

[2] The Court's disagreement with this proposition, *ante* at 12, n. 8, is difficult to understand. If, as 8 U. S. C. §1101(a)(43) quite plainly suggests and the Court has held, a state conviction can qualify as an "aggravated felony," we must determine what is meant by a state "offense" that is a "felony punishable under the [CSA]." There is no way to do this other than by identifying a set of relevant conduct and asking whether, based on that conduct, the alien could have been convicted of a felony if prosecuted under the CSA in federal court. In rejecting what it referred to as a "hypothetical approach," the *Carachuri-Rosendo* Court was addressing an entirely different question, specifically, *which* set of conduct is relevant. *Carachuri-Rosendo* v. *Holder*, 560 U. S. ___, ___–___ (2010) (slip op., at 8, 15–17). We held that the relevant set of conduct consisted of that which was in fact charged and proved in the state-court proceeding, not the set of conduct that could have been proved in a hypothetical federal proceeding.

In *Lopez* v. *Gonzales*, 549 U. S. 47, 50 (2006), we held that felony status is controlled by federal, not state, law. As a result, once the relevant conduct is identified, it must be determined whether proof of that conduct would support a felony conviction under the CSA. The federal definition of a felony is a crime punishable by imprisonment for more than one year. 18 U. S. C. §§3559(a)(1)–(5). Consequently, if the proof of the relevant conduct would support a conviction under the CSA for which the maximum term of imprisonment is more than one year, the state conviction qualifies as a conviction for an "aggravated felony."

## II

This brings us to the central question presented in this case: how to determine and evaluate the conduct that constitutes the state "offense." One possibility is that actual conduct is irrelevant, and that only the elements of the state crime for which the alien was convicted matter. We have called this the "categorical approach," *Taylor* v. *United States*, 495 U. S. 575, 600 (1990), and we have *generally* used this approach in determining whether a state conviction falls within a federal definition of a crime, see *id.,* at 600–601 ("Section 924(e)(2)(B)(i) defines 'violent felony' as any crime punishable by imprisonment for more than a year that 'has as an element'—not any crime that, in a particular case, involves—the use or threat of force. Read in this context, the phrase 'is burglary' in §924(e)(2)(B)(ii) most likely refers to the elements of the statute of conviction, not to the facts of each defendant's conduct"). But, as will be discussed below, we have also departed in important ways from a pure categorical approach.

The Court's opinion in this case conveys the impression that its analysis is based on the categorical approach, but that is simply not so. On the contrary, a pure categorical

approach leads very quickly to the conclusion that petitioner's Georgia conviction was a conviction for an "aggravated felony."

The elements of the Georgia offense were as follows: knowledge, possession of marijuana, and the intent to distribute it. Ga. Code Ann. §16–13–30(j)(1) (2007); *Jackson* v. *State*, 295 Ga. App. 427, 435, n. 28, 671 S. E. 2d 902, 909, n. 28 (2009). Proof of those elements would be sufficient to support a conviction under 21 U. S. C. §841(a), and the maximum punishment for that offense is imprisonment for up to five years, §841(b)(1)(D) (2006 ed., Supp. V), more than enough to qualify for felony treatment. Thus, under a pure categorical approach, petitioner's Georgia conviction would qualify as a conviction for an "aggravated felony" and would render him ineligible for cancellation of removal.

The Court departs from this analysis because §841(b)(4) provides a means by which a defendant convicted of violating §841(a) (2006 ed.) may lower the maximum term of imprisonment to no more than one year. That provision states that "any person who violates [§841(a)] by distributing a small amount of marihuana for no remuneration shall be treated as" a defendant convicted of simple possession, and a defendant convicted of that lesser offense faces a maximum punishment of one year's imprisonment (provided that the defendant does not have a prior simple possession conviction), §844 (2006 ed., Supp. V). Reading this provision together with §841(a), the Court proceeds as if the CSA created a two-tiered possession-with-intent-to-distribute offense: a base offense that is punishable as a misdemeanor and a second-tier offense (possession with intent to distribute more than a "small amount" of marijuana or possession with intent to distribute for remuneration) that is punishable as a felony.

If the CSA actually created such a two-tiered offense, the pure categorical approach would lead to the conclusion

that petitioner's Georgia conviction was not for an "aggra-
vated felony." The elements of the Georgia offense would
not suffice to prove the second-tier offense, which would
require proof that petitioner possessed more than a "small
amount" of marijuana or that he intended to obtain
remuneration for its distribution. Instead, proof of
the elements of the Georgia crime would merely estab-
lish a violation of the base offense, which would be a
misdemeanor.

The CSA, however, does not contain any such two-tiered
provision. And §841(b)(4) does not alter the elements of
the §841(a) offense. As the Court notes, every Court of
Appeals to consider the question has held that §841(a) is
the default offense and that §841(b)(4) is only a mitigating
sentencing guideline, see *United States* v. *Outen*, 286 F. 3d
622, 636–639 (CA2 2002) (Sotomayor, J.) (describing
§841(b)(4) as a "mitigating exception"); *United States* v.
*Hamlin*, 319 F. 3d 666, 670 (CA4 2003) (collecting cases),
and the Court does not disagree, *ante*, at 11–13.

Confirmation of this interpretation is provided by the
use of the term "small amount" in §841(b)(4). If §841(b)(4)
had been meant to alter the elements of §841(a), Congress
surely would not have used such a vague term. Due pro-
cess requires that the elements of a criminal statute be
defined with specificity. *Connally* v. *General Constr. Co.*,
269 U. S. 385, 393 (1926). Accordingly, it is apparent that
§841(b)(4) does not modify the elements of §841(a) but
instead constitutes what is in essence a mandatory sen-
tencing guideline. Under this provision, if a defendant is
convicted of violating §841(a), the defendant may attempt
to prove that he possessed only a "small amount" of mari-
juana and that he did not intend to obtain remuneration
for its distribution. If the defendant succeeds in convinc-
ing the sentencing judge, the maximum term of imprison-
ment is lowered to one year.

In sum, contrary to the impression that the Court's

opinion seeks to convey, the Court's analysis does not follow the pure categorical approach.

## III

Nor is the Court's analysis supported by prior case law. The Court claims that its approach follows from our decision in *Carachuri-Rosendo* v. *Holder*, 560 U. S. \_\_\_ (2010), but that case—unlike the Court's opinion—faithfully applied the pure categorical approach.

In *Carachuri-Rosendo*, the alien had been convicted in a Texas court for simple possession of a controlled substance. *Id*., at \_\_\_ (slip op., at 6). At the time of that conviction, Carachuri-Rosendo had a prior state conviction for simple possession, but this fact was not charged or proved at his trial and was apparently not taken into account in setting his sentence, which was 10 days in jail. *Id*., at \_\_\_, \_\_\_–\_\_\_ (slip op., at 5–6). Arguing that Carachuri-Rosendo was ineligible for cancellation of removal, the Government maintained that his second simple possession conviction qualified under the INA as a conviction for an "aggravated felony." *Id*., at \_\_\_ (slip op., at 5). This was so, the Government contended, because, if Carachuri-Rosendo's second simple-possession prosecution had been held in federal court, he could have been punished by a sentence of up to two years due to his prior simple possession conviction. *Id*., at \_\_\_ (slip op., at 5).

This more severe sentence, however, would have required the federal prosecutor to file a formal charge alleging the prior conviction; Carachuri-Rosendo would have been given the opportunity to defend against that charge; and the heightened sentence could not have been imposed unless the court found that the prior conviction had occurred. *Id.,* at \_\_\_ (slip op., at 14).

Our rejection of the Government's argument thus represented a straightforward application of the pure categorical approach. The elements of the Texas offense for which

Carachuri-Rosendo was convicted were knowledge or intent, possession of a controlled substance without a prescription, and nothing more. *Id.,* at ___ (slip op., at 6); Tex. Health & Safety Code Ann. §§481.117(a), (b) (West 2010). Proof of a prior simple possession conviction was not required, and no such proof appears to have been offered. The maximum penalty that could have been imposed under federal law for simple possession (without proof of a prior simple possession conviction) was one year's imprisonment. Thus, proof in federal court of the elements of the Texas offense would not have permitted a felony-length sentence, and consequently the state conviction did not qualify as a felony punishable under the CSA.

## IV

Unsupported by either the categorical approach or our prior cases, the decision of the Court rests instead on the Court's belief—which I share—that the application of the pure categorical approach in this case would lead to results that Congress surely did not intend.

Suppose that an alien who is found to possess two marijuana cigarettes is convicted in a state court for possession with intent to distribute based on evidence that he intended to give one of the cigarettes to a friend. Under the pure categorical approach, this alien would be regarded as having committed an "aggravated felony." But this classification is plainly out of step with the CSA's assessment of the severity of the alien's crime because under the CSA the alien could obtain treatment as a misdemeanant by taking advantage of 21 U. S. C. §841(b)(4).

For this reason, I agree with the Court that such an alien should not be treated as having committed an "aggravated felony." In order to avoid this result, however, it is necessary to depart from the categorical approach, and that is what the Court has done. But the particular way in which the Court has departed has little to recommend

it.

To begin, the Court's approach is analytically confused. As already discussed, the Court treats §841(b)(4) as if it modified the elements of §841(a), when in fact §841(b)(4) does no such thing. And the Court obviously knows this because it does not suggest that §841(b)(4) changes the elements of §841(a) for criminal law purposes.[3]

In addition, the Court's approach leads to the strange and disruptive results noted at the beginning of this opinion. As an initial matter, it leads to major drug trafficking crimes in about half the States being excluded from the category of "illicit trafficking in a controlled substance." Moreover, it leads to significant disparities between equally culpable defendants. We adopted the categorical approach to avoid disparities in our treatment of defendants convicted in different States for committing the same criminal conduct. See *Taylor,* 495 U. S., at 590–591 (rejecting the view that state law determined the meaning of "burglary" because "[t]hat would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State

_____

[3] The Court defends its interpretation of 21 U. S. C. §§841(a), (b)(4) by arguing that *Carachuri-Rosendo* v. *Holder*, 560 U. S. ___ (2010), rejected any recourse to a "hypothetical approach" for determining how a criminal prosecution likely would have proceeded, see *ante,* at 12, and that is true enough. But, as discussed above, see n. 2, *supra*, just because the categorical approach does not require conjecture as to whether a hypothetical federal prosecutor would be likely to charge and prove a prior conviction does not mean that it also precludes analysis of the structure of the federal criminal statute at hand. Indeed, our categorical-approach cases have done little else. See, *e.g., Carachuri-Rosendo, supra*, at ___ (slip op., at 14) (discussing procedural protections Carachuri-Rosendo would have enjoyed had he been prosecuted federally); *Gonzales* v. *Duenas-Alvarez*, 549 U. S. 183, 185, 189–194 (2007) (the term "theft offense" in 8 U. S. C. §1101(a)(43)(G) includes the crime of aiding and abetting a theft offense).

of his prior conviction happened to call that conduct 'burglary'"). Yet the Court reintroduces significant disparity into our treatment of drug offenders. All of this can be avoided by candidly acknowledging that the categorical approach is not the be-all and end-all.

When Congress wishes to make federal law dependent on certain prior state convictions, it faces a difficult task. The INA provisions discussed above confront this problem, and their clear objective is to identify categories of criminal conduct that evidence such a high degree of societal danger that an alien found to have engaged in such conduct should not be allowed to obtain permission to remain in this country. Since the vast majority of crimes are prosecuted in the state courts, Congress naturally looked to state, as well as federal, convictions as a metric for identifying these dangerous aliens.

But state criminal codes vary widely, and some state crimes are defined so broadly that they encompass both very serious and much less serious cases. In cases involving such state provisions, a pure categorical approach may frustrate Congress' objective.

The Court has said that the categorical approach finds support in the term "conviction." *Taylor, supra,* at 600; *Shepard* v. *United States*, 544 U. S. 13, 19 (2005). But the Court has never held that a pure categorical approach is dictated by the use of that term,[4] and I do not think that it is. In ordinary speech, when it is said that a person was convicted of or for doing something, the "something" may include facts that go beyond the bare elements of the

_____

[4] Instead, the Court adopted the categorical approach based on a combination of factors, including judicial efficiency. See *Taylor*, 495 U. S., at 601 ("[T]he practical difficulties and potential unfairness of a factual approach are daunting. In all cases where the Government alleges that the defendant's actual conduct would fit the generic definition of burglary, the trial court would have to determine what that conduct was").

relevant criminal offense. For example, it might be said that an art thief was convicted of or for stealing a Rembrandt oil painting even though neither the identity of the artist nor the medium used in the painting are elements of the standard offense of larceny. See 3 W. LaFave, Substantive Criminal Law §19.1(a) (2d ed. 2003).

For these reasons, departures from the categorical approach are warranted, and this Court has already sanctioned such departures in several circumstances. See *Taylor*, *supra*, at 602 (modified categorical approach); *Gonzales* v. *Duenas-Alvarez*, 549 U. S. 183, 193 (2007) (categorical approach does not exclude state-law convictions unless there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime"); *Nijhawan* v. *Holder*, 557 U. S. 29, 32 (2009) (interpreting an enumerated "aggravated felony" in 8 U. S. C. §1101(a)(43) not to be a generic crime). Consistent with the flexibility that the Court has already recognized, I would hold that the categorical approach is not controlling where the state conviction at issue was based on a state statute that encompasses both a substantial number of cases that qualify under the federal standard and a substantial number that do not. In such situations, it is appropriate to look beyond the elements of the state offense and to rely as well on facts that were admitted in state court or that, taking a realistic view, were clearly proved. Such a look beyond the elements is particularly appropriate in a case like this, which involves a civil proceeding before an expert agency that regularly undertakes factual inquiries far more daunting than any that would be involved here. See, *e.g., Negusie* v. *Holder*, 555 U. S. 511 (2009).

Applying this approach in the present case, what we find is that the Georgia statute under which petitioner was convicted broadly encompasses both relatively minor

offenses (possession of a small amount of marijuana with the intent to share) and serious crimes (possession with intent to distribute large amounts of marijuana in exchange for millions of dollars of profit). We also find that petitioner had the opportunity before the BIA to show that his criminal conduct fell into the category of relatively minor offenses carved out by §841(b)(4). Administrative Record 16–26. The BIA takes the entirely sensible view that an alien who is convicted for possession with intent to distribute may show that his conviction was not for an "aggravated felony" by proving that his conduct fell within §841(b)(4). *Matter of Castro-Rodriguez*, 25 I. & N. Dec. 698, 701–702 (2012). Petitioner, for whatever reason, availed himself only of the opportunity to show that his conviction had involved a small amount of marijuana and did not present evidence—or even contend—that his offense had not involved remuneration. Administrative Record 16–26, 37. As a result, I think we have no alternative but to affirm the decision of the Court of Appeals, which in turn affirmed the BIA.