WATFORD, Circuit Judge,
concurring in the judgment:
I agree that Gabriel Almanza-Arenas’ conviction under California Vehicle Code § 10851(a) is not a conviction for a crime involving moral turpitude. But I disagree with the court’s conclusion, predicated on the same reasoning our court adopted in Rendon v. Holder, 764 F.3d 1077 (9th Cir.2014), that § 10851(a) is an “indivisible” statute. I would overrule Rendon, as I think its approach to divisibility analysis is inconsistent with the approach required by Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). I will be the first to admit, though, that the correct reading of Descamps (and in particular its footnote 2) is open to debate, as reflected by the clash between the panel’s opinion in Rendon and the opinions dissenting from our refusal to rehear that case en banc.[1] Given how frequently ques *484 tions of divisibility arise, in both the criminal and immigration contexts, we need a clear and easy-to-apply rule for distinguishing between statutes that are divisible and those that are not. If not in this case then hopefully in another case soon, the Supreme Court will step in to provide further guidance.
I
The only question before us is whether Almanza-Arenas’ conviction under § 10851(a) counts as a conviction for a crime involving moral turpitude under the cancellation of removal statute. To answer that question, we use the so-called “categorical approach,” which requires us to compare the elements of the statute under which the petitioner was convicted to the elements of the relevant generic offense to see if the two sets of elements are a categorical match. Descamps, 133 S.Ct. at 2281. The first step is to identify the elements of the statute of conviction, and in our case that’s easy to do. California Vehicle Code § 10851(a), as relevant here, provides as follows: “Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle ... is guilty of a public offense.... ” For our purposes, the statute has three elements: (1) the actus reus, which can be satisfied by either driving or taking a vehicle belonging to someone else; (2) the attendant circumstance that the taking or driving be without the owner’s consent; and (3) the mens rea, which can be satisfied by intending either to permanently or temporarily deprive the owner of the vehicle.
The next step is to compare those elements to the elements of the relevant generic offense. In this instance, we don’t have a federal statute that specifies the relevant generic offense. The cancellation of removal statute simply refers to “a crime involving moral turpitude.” 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2). The Board of Immigration Appeals (BIA) has given substance to that vague phrase by specifying over time which generic offenses involve moral turpitude and which do not. With respect to the closest analogue for our purposes, the BIA has held that a theft offense constitutes a crime involving moral turpitude if the defendant intended to permanently deprive the owner of the property, but not if the defendant intended to effect only a temporary deprivation. See Castillo-Cruz v. Holder, 581 F.3d 1154, 1159-60 (9th Cir.2009).
Comparing the elements of § 10851(a) to the elements of the relevant generic offense, it’s clear that § 10851(a) is not a categorical match. The statute “criminalizes a broader swath of conduct than the relevant generic offense,” Descamps, 133 S.Ct. at 2281, by sweeping in car thieves who intended only a temporary deprivation as well as those who intended a permanent deprivation.
That conclusion, however, does not end our inquiry. Whenever a state statute covers a broader range of conduct than the relevant generic offense, we ask whether the statute is divisible' — -that is, whether the statute “comprises multiple, alternative versions of the crime.” Id. at 2284. If it does, and if at least one of those alternatives would be a categorical match for the generic offense, we then use the modified categorical approach to figure out which version of the offense the defendant was convicted of. Id. at 2285.
So when does a statute comprise “multiple, alternative versions of the crime”? Descamps seems to offer a simple answer: whenever the statute itself specifies, in the alternative, multiple ways a particular element can be satisfied. Také the two hypo *485 thetical divisible statutes the Court mentioned in Descamps: a burglary statute prohibiting unlawful entry into either a building or an automobile; and an assault statute requiring use of a gun, axe, sword, baton, slingshot, knife, machete, or bat. Id. at 2281, 2289-90. Those statutes are divisible because they specify the alternative ways one element of the offense can be satisfied. The statutes would therefore allow a prosecutor to narrow the offense by selecting one of the specified alternatives as the basis for the charge. For example, if a prosecutor charged the defendant under the first statute with entering a building, and the jury was accordingly instructed that it had to find that the defendant entered a building in order to convict, we would know the defendant was convicted of the entry-into-a-building version of the offense rather than the entry-into-an-automobile version.
We have real-world examples of divisible statutes, too. In Moncrieffe v. Holder, — U.S. -, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013), the Court treated as divisible “a Georgia statute that makes it a crime to ‘possess, have under [one’s] control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana.’ ” Id. at 1685 (quoting Ga.Code Ann. § 16 — 13— 30(j)(l)). Each of those disjunctively listed phrases was deemed to describe an alternative version of the offense, and by consulting the petitioner’s plea agreement the Court determined that he had been convicted of the possession-with-intent-to-distribute version. Id. The Court then analyzed whether that version of the offense was a categorical match for the relevant generic offense.
Contrast those statutes with the statute Descamps held is not divisible (at least with respect to the element at issue in that case)! California Penal Code § 459 provides that every person who “enters any house, room, apartment, [or any of about two dozen other locations] with intent to commit grand or petit larceny or any felony is guilty of burglary.” That statute has several elements, two of which could potentially have been divisible: the location that must be entered (house, room, etc.) and the required mens rea (intent to commit grand larceny, petit larceny, or any felony). The Court did not need to explore whether those elements were divisible because the statute’s remaining element— the “entry” element — was indivisible and rendered the statute broader than the generic burglary offense. The generic offense requires “breaking and entering or similar conduct,” whereas the California statute covers any person who “enters” certain locations, whether the entry is lawful or unlawful. Descamps, 133 S.Ct. at 2282. (The Court noted, for example, that the statute covers “a shoplifter who enters a store, like any customer, during normal business hours.” Id.) The Court held that the “entry” element of § 459 is indivisible because it does not contain alternative statutory phrases, “with one statutory phrase corresponding to the generic crime and another not.” Id. at 2286. Instead, the statute contains just a single term— “enters” — which is itself overbroad. Thus, a prosecutor could not narrow the offense by selecting from a list of statutorily specified alternatives describing the different ways the entry element could be satisfied.
What seems to define a divisible statute, then, is the fact that the statute itself specifies alternative ways a particular element can be satisfied. Id. at 2285 n. 2. That allows the court to determine, at least potentially, “which statutory phrase was the basis for the conviction.” Id. at 2285. Indivisible statutes, by contrast, lack this defining textual feature. They contain a single statutory phrase that is not broken down into statutorily specified alternatives, *486 each of which would be sufficient to satisfy the element. Under the approach to divisibility that Descamps seems to require, we don’t need to look beyond the text of the statute to decide whether it’s divisible: If the statute is “drafted in the alternative,” id. at 2285 n. 2 — meaning it contains alternative statutory phrases describing the different ways a particular element can be met — the statute is divisible with respect to that element. If not, the statute is indivisible.[2]
Assuming I’m right about Descamps ’ approach to divisibility, this is an ‘ easy case. Section 10851(a) seems no different from the divisible statutes I mentioned earlier. It defines an element of the offense — the mens rea with which the defendant must act — by specifying alternative ways that element can be satisfied: either by intending to permanently deprive the owner of the vehicle, or by intending to temporarily deprive the owner of the vehicle. No less than in the other statutes, the alternative statutory phrases describe alternative versions of the crime, which would allow a prosecutor to narrow the offense by selecting one of the statutorily specified alternatives.
Some judges on our court, including the panel members in Rendon and the majority of the en banc panel in this case, have rejected this straightforward approach to divisibility. They have concluded that it is not enough, as Descamps seems to hold, that a statute is “drafted in the alternative.” They believe we must ask, in addition, whether the statute’s disjunctively listed phrases describe alternative “means” or alternative “elements.” To answer that question, they say, we must consult state case law and model jury instructions. Doing so will tell us, in a case in which the prosecutor charges multiple alternative statutory phrases, whether the jury must unanimously agree on one of them in order to convict. If jury unanimity is required, the statutory phrases are alternative elements; if jury unanimity is not required, the statutory phrases are alternative nieans. A statute may be deemed divisible if it contains alternative elements, but not if it contains alternative means. Or so the thinking goes. See Maj. op. at 477-82.
This focus on distinguishing between “elements” arid “means” seems inconsistent with Descamps ’ approach to divisibility. For one thing, the Court in Descamps never suggested that state case law or model jury instructions would need to be consulted in order to determine whether a statute is divisible. As noted above, the Court seemed to hold that the analysis involves a purely textual inquiry. The Court looked to state case law and model jury instructions only when determining what conduct was encompassed by a particular element, a matter that state law unquestionably controls. See Descamps, 133 S.Ct. at 2282 (citing People v. Barry, 94 Cal. 481, 29 P. 1026 (1892)); id. at 2291-92 n. 5.
For another thing, in response to the dissent’s emphasis on the distinction between elements and means, the Court seemed to indicate that such a distinction is irrelevant, at least for purposes of determining whether a statute is divisible. “Whatever a statute lists (whether elements or means),” the Court wrote, “the documents we approved in Taylor and Shepard — i.e., indictment, jury instructions, plea colloquy, and plea agreement— would reflect the crime’s elements. So a court need not parse state law in the way *487 the dissent suggests: When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.” Id. at 2285 n. 2.
Lower courts have offered conflicting readings of this passage. (See, for example, the eases cited in note 1, • swpra.) What I understand the passage to say is that it doesn’t matter whether alternative statutory phrases would be labeled “elements” or “means” under state law. Whether a statute is divisible under the categorical approach is a question of federal law, and we can assess divisibility básed on an examination of the text of the statute alone. If the statute is drafted in the alternative, it’s at least possible that the offense of conviction was narrowed by selecting one of the statutorily specified alternatives. Examination of the documents approved in Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), and Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) — which I will refer to in short as the Shepard documents — will tell us if that is true.
For example, let’s assume a statute contains three alternative statutory phrases that would be deemed “means” rather than “elements” under state law, because in a case charging all three the jury would not need to agree unanimously on which one was satisfied. Even in that scenario, the offense of conviction could still be narrowed if, for example, in the specific case at hand the prosecutor actually charged only one of the statutory phrases. Or even if the prosecutor charged all three in the disjunctive, the defendant may have admitted just one- of them in his plea agreement and plea colloquy. Or, if the case proceeded to trial, the jury may have been instructed on just one of the statutory phrases, such that the jury had to find that particular phrase satisfied in order to convict. In those cases, too, by examining the Shepard documents a court could determine “which statutory phrase was the basis for the conviction.” Descamps, 133 S.Ct. at 2285. That, it seems to me, is what the Court meant when it said that, regardless of whether alternative statutory phrases are called elements or means as a general matter, the Shepard documents will tell us what the elements of the offense of conviction were in the specific case at hand. The approach to divisibility my colleagues have adopted here cannot be squared with this reading of Descamps.[3]
II
If § 10851(a) is indeed divisible, we can apply the modified categorical approach, which allows us to review the Shepard documents to see if Almanza-Arenas was convicted of a narrower version of the offense. The Shepard documents include the indictment or information and, in cases resolved by guilty plea, the plea agreement and plea colloquy. Descamps, 133 S.Ct. at 2284. If Almanza-Arenas was in fact convicted of a narrower version of the offense, we would then compare the elements of that version of the offense to the elements of the generic offense to see if they eate- *488 gorically match, just as we would under the regular, unmodified categorical approach. See id. at 2285.
I concur in the court’s judgment because the Shepard documents in this case do not establish that Almanza-Arenas was convicted of a narrower version of the § 10851(a) offense. Count 1 of the complaint charged that, on a specified date, Almanza-Arenas “did unlawfully drive and take a vehicle, the personal property of Guadalupe Jimenez, without the consent of and with intent either permanently or temporarily to deprive the owner of title to and possession of said vehicle.” (Emphasis added.) Almanza-Arenas entered a guilty plea to Count 1 under People v. West, 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970), which means he entered the plea without admitting a factual basis for it. Because the complaint charged that Almanza-Arenas acted with the intent to permanently or temporarily deprive the owner of the vehicle, the prosecutor did not narrow the offense by selecting one of the alternative statutory phrases. Nor was the offense narrowed when Almanza-Arenas pleaded guilty. Neither in his plea agreement nor, we can safely assume, during the plea colloquy did Almanza-Arenas select one of the alternative statutory phrases and admit to a factual basis satisfying that statutory phrase alone. Alman-za-Arenas entered a West plea, so he did not admit to a factual basis for anything. He simply pleaded guilty to the offense as described in Count 1.
In this instance, then, use of the modified categorical approach does not show that Almanza-Arenas was convicted of a narrower version of the offense. It establishes only that he was convicted of the broader version, encompassing an intent to permanently or temporarily deprive the owner of the vehicle. When a defendant pleads guilty to an offense encompassing multiple, alternative ways of satisfying a particular element, the conviction is deemed to rest on only the least of the acts criminalized. Mellouli v. Lynch, — U.S. -, 135 S.Ct. 1980, 1986, 192 L.Ed.2d 60 (2015). Thus, under the modified categorical approach, Almanza-Arenas’ conviction necessarily establishes only that he took the victim’s vehicle with the intent to temporarily deprive her of possession. That version of the offense, as noted earlier, is not a categorical match for the generic theft offense that counts as a crime involving moral turpitude.
The government argues that Almanza-Arenas’ conviction nonetheless qualifies as a conviction for a crime involving moral turpitude because, under the cancellation of removal statute, he bore the burden of proving eligibility for such relief and one of the requirements for doing so is proving that he has not been convicted of a crime involving moral turpitude. When a petitioner seeking cancellation of removal has been convicted under an overbroad statute like § 10851(a), the government contends that the record will always be inconclusive as to which version of the offense he committed: While it’s possible the petitioner committed the version of the offense that is not a categorical match, it’s also possible that he committed the version that is a categorical match. Relying on our decision in Young v. Holder, 697 F.3d 976, 988-90 (9th Cir.2012) (en banc), the government argues that because the petitioner in these circumstances can’t rule out the possibility that he committed a crime involving moral turpitude, he has not carried his burden of proving eligibility for relief.[4]
*489 Both the government’s argument and our decision in Young are fundamentally incompatible with the categorical approach, especially after Descamps and Moncrieffe clarified the elements-focused nature of the inquiry. Under the categorical approach, a court must determine “what facts are necessarily established by a conviction for the state offense.” Moncrieffe, 133 S.Ct. at 1693 n. 11. What the defendant actually did to commit the crime is entirely irrelevant. Descamps, 133 S.Ct. at 2287-89.
It’s true, as the government notes, that uncertainty remains as to what Almanza-Arenas actually did to violate § 10851(a). He may have acted with the intent to permanently deprive the victim of her vehicle, or he may have intended only a temporary deprivation — we don’t know. But uncertainty on that score doesn’t matter. What matters here is whether Al-manza-Arenas’ conviction necessarily established that he acted with the intent to permanently deprive the owner of her vehicle, the fact required to render the offense a crime involving moral turpitude. That is a legal question with a yes or no answer, see Mellouli, 135 S.Ct. at 1986-87, and here the answer is no: Almanza-Are-nas’ conviction necessarily established only that he acted with the intent to temporarily deprive the owner of her vehicle. The record is not inconclusive in that regard, and because this issue involves a purely legal determination (rather than a factual determination, as Young wrongly held), its resolution is unaffected by which party bears the burden of proof. As a legal matter, Almanza-Arenas’ § 10851(a) conviction does not qualify as a conviction for a crime involving moral turpitude.
Ill
The BIA relied on an alternative ground for declaring Almanza-Arenas ineligible for cancellation of removal, but that ground is also legally unsound.
During the proceedings before the immigration judge, the government produced some of the Shepard documents relating to Almanza-Arenas’ § 10851(a) conviction. The government did not, however, produce a transcript of the plea colloquy, no doubt recognizing that it wouldn’t reveal any useful information, since Almanza-Arenas entered a West plea. Nonetheless, the immigration judge ordered Almanza-Arenas to produce the plea colloquy. When Alman-za-Arenas failed to do so, the immigration judge relied on that failure to conclude that he had not carried his burden of proving eligibility for relief. The BIA affirmed the immigration judge’s ruling.
The BIA’s decision might have been supportable had the immigration judge ordered Almanza-Arenas to produce a Shepard document potentially relevant to the analysis required under the modified categorical approach. Congress has assigned petitioners seeking cancellation of removal the burden of proving eligibility for such relief. 8 U.S.C. § 1229a(c)(4). It would be an odd regime in which a petitioner could establish eligibility by refusing to produce a document that might show he is statutorily ineligible, at least where the immigration judge specifically orders production of such a document and the petitioner is capable of complying with the order. But that is not the situation here. Because Almanza-Arenas entered a West plea, he made no factual admissions in the course of pleading guilty. See People v. Rauen, 201 Cal.App.4th 421, 133 Cal.Rptr.3d 732, 734 (2011). Production of the plea colloquy would therefore have had no bearing on the analysis required under the modified categorical approach. The BIA erred by declaring Almanza-Arenas ineligible for cancellation of removal solely be *490 cause he failed to produce an irrelevant document.

. See Rendon v. Holder, 782 F.3d 466, 467-73 (9th Cir.2015) (Graber, J., dissenting from denial of rehearing en banc); id. at 473-74 (Kozinski, J., dissenting from denial of rehearing en banc); see also United States v. Mathis, 786 F.3d 1068, 1074-75 & n. 6 (8th Cir.2015); Omargharib v. Holder, 775 F.3d 192, 198-200 (4th Cir.2014); id. at 200-02 (Niemeyer, J., concurring); United States v. Trent, 767 F.3d 1046, 1058-63 (10th Cir.2014); United States v. Howard, 742 F.3d 1334, 1343-49 (11th Cir.2014).

. Contrary to the majority's suggestion, nothing about this approach to divisibility requires looking at "the facts of each case” to "discover the means of how the person committed the offense.” Maj. op. at 479 n. 14. It just requires looking at the text of the statute.

. One aspect of the majority's approach that seems especially at odds with Descamps is the majority’s reliance on the Shepard documents in Almanza-Arenas' own case to "confirm" its view that § 10851(a) is indivisible. Maj. op. at 478. A statute's divisibility isn't determined on a case-by-case basis, so it’s hard to see why one would consult the Shepard documents in any given case when trying to make that threshold determination. As I understand Descamps’ instructions, we may look to the Shepard documents only after we've first determined that the statute is divisible, not when trying to decide whether the statute is divisible or indivisible.

. Several other circuits have adopted the rule in Young. See Peralta Sauceda v. Lynch, 804 F.3d 101, 103 (1st Cir.2015) (collecting cases). The Second Circuit has rejected the rule. Martinez v. Mukasey, 551 F.3d 113, 121-22 (2d Cir.2008).